03764/76653-BDB

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON**

| | |
|---|---|
| **AUGUSTINA C. AMALU, individually and as next kin of and Administrator of the Estate of IFEYINWA STEPHANIE AMALU, deceased, et al.**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LSH TRANSPORT, LLC, et al.,**<br><br>**Defendants.** | **Docket No. 1:15-cv-01116-egb<br>Consolidated with: 1:15-cv-01117 & 1:15-cv-01175**<br><br>**JURY DEMAND** |

**RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE APPLICABILITY OF TENN. CODE ANN. § 29-39-102 BY DEFENDANTS LSH TRANSPORT, LLC; STEVE HURT; AND TIM MILLS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TONY R. MILLS**

### I.     Introduction

Plaintiffs seek entry of an order for partial summary judgment holding that the $750,000 cap on noneconomic damages does not apply.[1] Plaintiffs assert that the cap, if it applies at all, should be raised to $1 million. But the deaths of Ms. Amalu and Ms. Udeozo do not qualify as a "catastrophic loss or injury" under the applicable statute, which does not apply where a person dies from her injuries.

---

1 As an initial matter, Plaintiff's motion is not yet ripe for determination because Plaintiffs have not obtained a verdict in excess of the caps. *See Clark v. Cain*, 479 S.W.3d 830, 832 (Tenn. 2015) (declining to address the constitutionality of the caps on ripeness grounds because the plaintiffs had not received a verdict in excess of the caps). Stevens Transport, Inc. fully addresses the ripeness issue in its Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment. (D.E. 433). Defendants adopt and incorporate Stevens Transport's response here. Defendants, however, also address the substantive merits of Plaintiffs' motion in the event the Court determines the issue is ripe for determination.

03764/76653-BDB

Plaintiffs also contend the caps should not apply at all under exceptions for the intentional destruction of material evidence and intoxication. Plaintiffs, however, have failed to meet their burden of demonstrating that either of the exceptions applies. There is no evidence that Steve Hurt intentionally destroyed any records of LSH Transport, LLC or other material evidence. Moreover, as to the intoxication exception, the statute requires that a defendant's intoxication be the proximate cause of an accident causing injury in order for the exception to apply. Thus, while a post-mortem autopsy revealed that Tony Mills (Mills) had methamphetamine in his system at the time of the accident, it is premature, at this juncture, for the Court to hold that the exception applies, given that proximate causation is a jury question.

## II.     Law and Argument

### A.     Plaintiffs' deaths are not a "catastrophic loss or injury" under Tennessee Code Annotated § 29-39-102(c).

Tennessee law limits the amount of noneconomic damages recoverable by a plaintiff. Tennessee Code Annotated § 29-39-102(a)(2) provides:

> Compensation for any noneconomic damages suffered by each injured plaintiff not to exceed seven hundred fifty thousand dollars ($750,000) for all injuries and occurrences that were or could have been asserted, regardless of whether the action is based on a single act or omission or a series of acts or omissions that allegedly caused the injuries or death.

Tenn. Code Ann. § 29-39-102(a)(2). If an injury is "catastrophic in nature," however, the $750,000 cap is raised to $1 million:

> If an injury or loss is catastrophic in nature, as defined in subsection (d), the seven-hundred-fifty-thousand-dollar amount limiting noneconomic damages, as set forth in subdivision (a)(2) and subsection (b) is increased to, but the amount of damages awarded as noneconomic damages shall not exceed, one million dollars ($1,000,000).

2

03764/76653-BDB

Tenn. Code Ann. § 29-39-102(c). The statute lists four specific catastrophic injuries which would raise the applicable cap to $1 million:

> (1) Spinal cord injury resulting in paraplegia or quadriplegia;
>
> (2) Amputation of two (2) hands, two (2) feet or one (1) of each;
>
> (3) Third degree burns over forty percent (40%) or more of the body as a whole or third degree burns up to forty percent (40%) percent or more of the face; or
>
> (4) Wrongful death of a parent leaving a surviving minor child or children for whom the deceased parent had lawful rights of custody or visitation.

Tenn. Code Ann. § 29-39-102(d).

Plaintiffs assert that they are entitled to a $1 million cap under subsection (3), which raises the cap where a plaintiff suffers third-degree burns over 40% or more of the body or face. Tenn. Code Ann. § 29-39-102(d)(3). While Ms. Amalu and Ms. Udeozo suffered burns over their bodies, their deaths do not constitute catastrophic injuries under the statute. A catastrophic injury under the statute does not include the death of someone who does not leave a surviving minor child. *See* Tenn. Code Ann. § 29-39-102(d). Because Ms. Udeozo and Ms. Amalu died from their injuries, they did not suffer a catastrophic injury as defined by the statute. The $750,000 cap therefore applies to Plaintiffs' claims.

The United States District Court for Eastern District of Tennessee has confirmed that catastrophic injury does not include death, unless the person leaves a surviving minor child. *See Kelley v. Apria Healthcare, LLC*, No. 3:13-cv-96, 2017 WL 2703520 (E.D. Tenn. June 22, 2017), *app. filed*, 2017 WL 2703520 (6th Cir. July 20, 2017). In *Kelley*, the court reviewed a jury's award of noneconomic damages in a case involving a decedent who suffered third-degree burns over 90% of his body and died from his injuries. *Id.* at *9-10. The defendant argued that the $750,000 cap applied because although the decedent

3

03764/76653-BDB

suffered burns over most of his body, he died from his injuries. *Id.* Thus, he did not suffer a catastrophic injury under the statute. *Id.*

The court found that the statute "does not include death, even when someone dies from a catastrophic injury." *Id.* at *10. As a result, the court held that the $750,000 cap applied. *Id.* In reaching this holding, the court noted that the statute contains four specific injuries considered to be catastrophic. The only injury involving death that is listed in the statute is when a decedent is survived by a minor child. *Id.* at *9-10. Moreover, all of the injuries listed in the statute involve permanency such that "[s]omeone who suffers paralysis, amputation, third-degree burns, or loss of a parent must live with that injury for the rest of his life. And because he must live with an unrecoverable injury, Tennessee allows him more compensation than it does for someone with a recoverable injury." *Id.* at *10. The statute, however, does not increase the cap where a person dies from a catastrophic injury.

The court also found that other language in the damages caps statute supported its holding. Section 29-39-102(a)(2) provides for a $750,000 cap for "each injured plaintiff," irrespective "of how many actions 'allegedly caused the injuries *or death.*'" *Id.* (emphasis added). Thus, the statute accounts for both injuries and deaths, indicating "that the $750,000 cap applies in wrongful-death suits (unless the plaintiff is a surviving minor child)." *Id.*

The court also relied on other statutes and case law concerning serious bodily injuries and catastrophic injuries. The court noted that Tennessee statutory law defines "serious bodily injury" as not including actual death. *Id.* (quoting Tenn. Code Ann. § 39-11-106); *see also State v. Beaty*, No. M2014-130-CCA-R3-CD, 2016 WL 6600148, at *29

4

03764/76653-BDB

(Tenn. Crim. App. Nov. 8, 2016) (interpreting "substantial risk of death," the only situation in the statute defining "serious bodily injury" which references death, as excluding actual death). This statute was therefore another example of how Tennessee law differentiates between injury and death.

Finally, the court recalled Tennessee decisions using "catastrophic injury," which almost always refer to injury, not death. *See id.* (citing *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 425 (Tenn. 2013); *Bomley v. Mid-America Corp.*, 970 S.W.2d 929, 937 (Tenn. 1998) (Holder, J., concurring and dissenting); *Miller v. Northland Ins. Co.*, No. M2013-572-COA-R3-CV, 2014 WL 1715076, at *1 (Tenn. Ct. App. Apr. 29, 2014); *Mullins v. Redmon*, No. W2007-616-COA-R3-CV, 2007 WL 4415266, at *1 (Tenn. Ct. App. Dec. 19, 2007); *Earls v. Earls*, 42 S.W.3d 877, 910 (Tenn. Ct. App. 2000); *Hart-man v. Univ. of Tenn.*, No. 01A01-9804-BC-196, 1998 WL 639121, at *1 (Tenn. Ct. App. Sept. 14, 1998); *State v. Harris*, No. W2013-1028-CCA-R3-CD, 2014 WL 3954054, at *14 (Tenn. Crim. App. Aug. 13, 2014)). Based on this authority, the court held that the term "catastrophic injury" in Section 29-39-102(d) does not include death, "even when someone dies from a catastrophic injury." *Id.*

Like in *Kelley*, Ms. Amalu and Ms. Udeozo did not suffer a catastrophic injury under the statute. The statute only applies to the four defined catastrophic injuries. It does not include the death of someone without minor children. Even though they suffered burns in the accident at issue, their deaths do not constitute catastrophic injuries which would increase the statutory cap because they died from their injuries. And neither Ms. Amalu nor Ms. Udeozo left a surviving minor child. (Dep. of Josephine Udeozo, p. 23, ll. 21-22); (Dep.

03764/76653-BDB

of Austina Amalu, p. 24, ll. 23-24). The $750,000 cap on noneconomic damages, and not the $1 million cap for catastrophic injuries, applies to Plaintiffs' claims.

### B. The exception to the noneconomic damages cap for intentionally destroying documents under Tennessee Code Annotated § 29-39-102(h)(2) does not apply.

Section 29-39-102 contains exceptions under which the noneconomic damages cap does not apply. Tenn. Code Ann. § 29-39-102(h) ("The limitation on the amount of noneconomic damages imposed by subdivision (a)(2) and subsections (b)-(e) shall not apply to personal injury and wrongful death actions" in certain circumstances). One exception applies where the defendant intentionally destroys material records:

> *If the defendant intentionally falsified, destroyed or concealed records containing material evidence with the purpose of wrongfully evading liability in the case at issue*; provided, however, that this subsection (h) does not apply to the good faith withholding of records pursuant to privileges and other laws applicable to discovery, nor does it apply to the management of records in the normal course of business or in compliance with the defendant's document retention policy or state or federal regulations;

Tenn. Code Ann. § 29-39-102(h)(2) (emphasis added). As shown by the statutory language, the exception only applies where a defendant acts "intentionally" for the purpose of "evading liability in the case at issue." Tenn. Code Ann. § 29-39-102(h)(2).

While the statute does not define when a defendant acts intentionally, intentional conduct has been defined in other contexts. In the context of punitive damages, a "person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *see also* Tenn. Code Ann. § 39-11-302(a) (defining "intentional" in the criminal

03764/76653-BDB

context as "a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result"). Applying the *Hodges* definition to Section 29-39-102(h)(2), the exception only applies where the destruction of records containing material evidence (conscious objective or desire) is deliberately carried out by the defendant in a specific way (the conduct).

Plaintiff has failed to present evidence that Hurt's conduct was intentional such that the exception should apply. As stated in Hurt's deposition, Hurt lived in a trailer home, where he also stored records pertaining to LSH. The trailer home was destroyed by fire several days before his deposition. Specifically, Hurt testified as follows:

Q. All right. What happened to those documents?

A. They – I had a fire over the weekend and all and burnt everything I had up.

Q. What weekend?

A. This past weekend?

Q. So your entire office burned down; is that what you're saying?

A. Yes.

Q. All right. Did you – before your entire office burned down, did you take what we asked and filed on June 8th of 2016 and gather those documents for responses –

A. I was gathering them up, yes, sir.

Q. Okay. And you – and you left them in the office and they're gone now?

A. They were in my home, yes.

Q. And you don't – in your house is where they were burnt?

A. Yes.

7

03764/76653-BDB

    Q.    All right. Did your whole house burn down?

    A.    Yes.

(Dep. of Steve Hurt, p. 36, l. 19-p. 37, l. 16, excerpts attached to Stmt. Add'l Material Facts).

    Hurt also testified as to the unknown cause of the fire:

    Q.    How did the fire start?

    A.    I – I have no idea. I wasn't home.

    Q.    Was anyone home?

    A.    No.

    Q.    Do you – who lives with you there?

    A.    Nobody.

    Q.    So the – the house is gone completely?

    A.    It's gone.

    Q.    Did the police come out and investigate?

    A.    Police – I don't think the police did, but the fire department came.

    Q.    Okay. Did they take a report?

    A.    Yes.

. . .

    Q.    Okay. And when did this fire happen?

    A.    This past weekend, Sunday.

    Q.    Where were you when – when was the last time you were at home before the fire happened?

    A.    Sunday morning.

    Q.    What were you doing Sunday morning?

03764/76653-BDB

> A. Working on a semi.
>
> Q. And you – when did you leave?
>
> A. About 10 o'clock Sunday morning.
>
> Q. Where'd you go?
>
> A. When and picked a trailer up and went to – I was on my way to Princeton, Indianan, and they called me and I turned around and went back home.

(Dep. of Hurt, p. 37, l. 17-p. 39, l. 5).

As shown by this testimony, there is no evidence that Hurt engaged in any intentional conduct to destroy material evidence. To the contrary, he testified that all of his files were maintained in the trailer home in which he was living at that time. While he was away from the home, it caught from an unknown source, causing LSH's files to also be burned. There is no evidence, however, that Hurt caused the fire or otherwise intentionally destroyed the records.

In order for the exception to apply, Plaintiffs must demonstrate that Hurt intentionally set fire to his home for the purpose of destroying documents relevant to this case and evading liability. *See* Tenn. Code Ann. § 29-39-102(h)(2) (stating that the exception only applies "[i]f the defendant intentionally falsified, destroyed or concealed records containing material evidence with the purpose of wrongfully evading liability in the case at issue"). Plaintiffs have produced no evidence to satisfy their burden. While Plaintiffs assert that the fire was a "blatant destruction of material evidence clearly designed to evade liability," there is no evidence supporting this unfounded accusation.[2] Plaintiffs have no evidence which

---

2 Plaintiff argue that Hurt destroyed "all material documentary evidence in LSH's possession concerning the truck at issue, and Mills, the driver of that truck." (Pls.' Mem. of

9

03764/76653-BDB

contradicts Hurt's testimony as to the cause of the fire which resulted in LSH's records being destroyed.

Plaintiffs also claim that LSH violated federal regulations governing retention of documents by motor carriers. The federal regulations require motor carriers to require certain documents for minimum retention period. 49 C.F.R. § 379.3. Appendix A to 49 C.F.R. 379 lists the specific categories of documents motor carriers are required to maintain and the corresponding retention periods. While Plaintiffs do not specifically identify the categories of records LSH failed to maintain under the regulation, LSH complied with the regulation to the extent Plaintiff claims it failed to maintain personnel records, freight bills, insurance records, and records related to accidents, inspections, tests, hours of service, and repairs, among other things. Those records are only required to be retained for six months or one year. 49 C.F.R. § 379 App'x A, at E(1) (personnel records), F(1) (insurance documents), I(1) (shipping and agency documents), K(2) (data for reports of accidents, inspections, tests, hours of service, repairs, etc.). Thus, the regulations did not require LSH to maintain those documents, which were destroyed in July 2016, longer than it did, given that the documents would have been generated over a year before the fire occurred.

  **C.** **Plaintiffs have failed to meet their burden of demonstrating that the exception to the noneconomic damages cap for intoxication under Tennessee Code Annotated § 29-39-102(h)(3) applies.**

In addition to removing the caps where a defendant intentionally destroys material evidence, Section 29-39-102 contains another exception concerning intoxication. Tenn.

---

Law, at 15). Contrary to Plaintiffs' assertions, however, Defendants produced all of its records (the entire driver qualification and personnel files) for Mills. (Dep. of Hurt, p. 270, ll. 19-22).

03764/76653-BDB

Code Ann. § 29-39-102(h)(3). The statute states that the noneconomic damages cap is removed:

> If the defendant was under the influence of alcohol, drugs or any other intoxicant or stimulant, resulting the defendant's judgment being *substantially impaired*, and *causing the injuries or death*. For purposes of this subsection (h), a defendant shall not be deemed to be under the influence of drugs or any other intoxicant or stimulant, if the defendant was using lawfully prescribed drugs administered in accordance with a prescription or over-the-counter drugs in accordance with the written instructions of the manufacturer[.]

Tenn. Code Ann. § 29-39-102(h)(3) (emphasis added).

While there is no available case law interpreting the statutory, the statutory language indicates that in order for the exception to apply, at least three elements must be met: (1) the defendant must have been "under the influence of alcohol, drugs, or any other intoxicant or stimulant"; (2) the intoxication must have resulted in the defendant's judgment being "substantially impaired"; and (3) the intoxication must have "caus[ed] the injuries or death." Tenn. Code Ann. § 29-39-102(h)(3). Although Plaintiffs have presented evidence that Mills had methamphetamine in his system at the time of the accident, they have failed to meet their burden of establishing the other two elements—that Mills was "substantially impaired" and that the intoxication was a proximate cause of the accident and the decedents' deaths.

As to the substantial impairment element, Plaintiffs have not presented evidence that Mills was "substantially impaired" at the time of the accident. In support of their argument, Plaintiffs rely on a report from their toxicology expert, Dr. Ferslew.[3] (D.E. 414-1, at 9; D.E. 415-3). Dr. Ferslew's report, however, does not state that Mills was substantially

---

[3] Plaintiffs filed Dr. Ferslew's report as Exhibit 3, not Exhibit 5, as referenced in Plaintiff's Memorandum of Law.

03764/76653-BDB

impaired at the time of the accident. (*See* D.E. 415-3). In fact, Dr. Ferslew states that because Mills was killed in the accident, "there was no way to assess his psychomotor capabilities following the crash." (D.E. 415-3, at 2-3). And while Dr. Ferslew states that the drugs "would have produced toxic effects on Mr. Mills" and that Mills would have been under the influence of methamphetamine "to some degree," the extent of those effects are unknown, as the effects are dependent on Mills' unknown degree of tolerance. (*See* D.E. 415-3, at 2-3).

Plaintiffs' also attribute other quotes to Dr. Ferslew's report, but those quotes are not contained in the report Plaintiffs have filed with the Court and produced in discovery. (*See* D.E. 414-1, at 10). Purporting to quote from Dr. Ferslew's report, Plaintiffs contend that Mills' inability to stop his tractor before the accident "is another indication of the impairment caused by his ingestion of methamphetamine." (D.E. 414-1, at 10). Dr. Ferslew's report, however, does not contain any such opinion. (*See* D.E. 415-3, at 1-3). But even if Dr. Ferslew's report did contain such an opinion, the opinion is insufficient to vitiate the noneconomic damages cap, given that he does not state that Mills' judgment was "substantially impaired" at the time of the accident.

Similarly, while Plaintiffs do not specifically rely on the opinion in support of their argument, the toxicologist who tested Mills' blood sample, Dr. Crooks, refers to Mills' methamphetamine levels. (D.E. 415-6, at 4). Dr. Crooks opines that Mills "was impaired by methamphetamine at the time of the accident." (D.E. 415-6, at 4). As with the opinion attributed to Dr. Ferslew, however, Dr. Crooks does not opine that Mills was "substantially impaired" at the time of the accident, as required by the statutory exception. Plaintiffs have therefore failed to meet their burden of establishing that the intoxication exception applies.

03764/76653-BDB

In addition to substantial impairment, the statute also requires, in order for the exception to apply, that the intoxication "caus[ed] the injuries or death." Tenn. Code Ann. § 29-39-102(h)(3). The statute therefore requires an analysis of proximate causation between the intoxication and the accident causing injuries. While there is no Tennessee case law available discussing the causation element of the statute, Tennessee courts have analyzed the causal connection between intoxication and injuries in interpreting statutes similar to Section 29-39-102(h)(3). Those cases confirm that the intoxication must be found to be the proximate cause of the accident or injuries at issue.

For instance, in workers' compensation cases, an employer may refuse to pay benefits "for an injury or death due to . . . [t]he employee's intoxication." Tenn. Code Ann. § 50-6-110. In interpreting the statute, Tennessee courts hold that, in order for the statute to apply, a defendant "has the burden of establishing proximate cause." *Overall v. Southern Subaru Star, Inc.*, 545 S.W.2d 1, 4 (Tenn. 1976). This is because when a statute refers to "caused by" or "due to," like the workers' compensation statute and similar to the noneconomic damages caps statute, "[i]t must mean proximate cause." *Id.* (quoting Larson, *Workmen's Compensation Law*, vol. 1A, § 43.33). As a result, the proximate cause analysis requires more than showing that a person's "blood contained a high level of intoxicants," as such as showing "is insufficient to establish intoxication as the proximate cause." *Fireman's Fund Ins. Co. v. Taylor Barton Mills*, No. 03S01-9601-CH-00008, 1996 WL 724922, at *2 (Tenn. Dec. 18, 1996) (citing *Gentry v. The Lilly Co.*, 476 S.W.2d 252 (Tenn. 1971); *Wooten Transports, Inc. v. Hunter*, 535 S.W.2d 858 (Tenn.1976)).

The Tennessee Supreme Court has held that proof that a driver was intoxicated and caused an accident is insufficient to satisfy causation. For instance, in *Wooten Transports,*

03764/76653-BDB

*Inc. v. Hunter*, the Tennessee Supreme Court reviewed a trial court's award, at trial, of statutory death benefits to an employee who was intoxicated at the time of the injury. 535 S.W.2d 858, 859 (Tenn. 1976). In that case, the employee, who was driving a tractor-trailer, crossed a highway after a vehicle pulled in front of him and collided with another tractor-trailer. *Id.* The court noted that the record revealed that there was no other traffic traveling in either direction on the five-lane highway, suggesting that the employee could have avoided a collision. *Id.* A pint-sized bottle of whiskey was found in the employee's truck and post-mortem blood tests revealed that the employee was intoxicated above the legal driving limit. *Id.* at 860. At trial, the chief medical examiner also testified that the percentage of alcohol in the bloodstream would "affect a person's response in a given situation" and that the person "would lose the capacity to make appropriate judgments in any given situation." *Id.* at 861.

Despite these facts and testimony, the Court affirmed the trial court's award of statutory benefits and held that the intoxication exception was not applicable. *Id.* The Court found there was "no direct proof that intoxication was the proximate cause of this accident." *Id.* While there was proof from which it could be inferred, there was also proof that that the accident was caused by something else (*e.g.*, the vehicle that pulled in front of the employee, the employee's speed, the employee's inattention, "or some other act of negligence"). *Id.* at 860-61. As a result, the Court held that the employer failed to carry its burden of establishing that the employee's intoxication was the proximate cause of the accident.

Like the Tennessee courts' interpretation of the worker's compensation statute, Section 29-39-102(h)(3) requires a showing that the intoxication was the proximate cause

Case 1:15-cv-01298-STA-egb   Document 191   Filed 01/12/18   Page 15 of 18   PageID 2193
03764/76653-BDB

of the injuries at issue. *See* Tenn. Code Ann. § 29-39-102(h)(3) (stating that the statutory cap does not apply where a defendant is substantially impaired in an accident "causing the injuries or death"); *see also Overall*, 545 S.W.2d at 4 (stating that a statute's use of causation terms, such as "caused by" or "due to," refers to proximate causation) (citations omitted). Thus, it is insufficient to demonstrate that the defendant was intoxicated at the time of the accident. Instead, it must be shown that the intoxication was the proximate cause of the accident.

Because Section 29-39-102(h)(3) requires that intoxication proximately cause the injuries at issue, summary judgment is an inappropriate judicial mechanism for determining whether the exception applies. The issue of proximate causation, as an issue of fact, is ordinarily a jury question. *See McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991) (holding that "proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome") (citations omitted); *Rucker v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 89-165-II, 1990 WL 182275, at *4 (Tenn. Ct. App. Nov. 28, 1990) ("Proximate cause is an issue of fact.").

In this case, Plaintiffs' allegations as to the cause of the accident demonstrate the uncertainty surrounding the proximate cause of the accident. While Plaintiffs' allege that Mills was under the influence of an illegal stimulant at the time of the accident, they also allege that he was "suffering from *fatigue induced sleep deprivation*" and that he did not "or was unable to stop in time." (D.E. 11 ¶ 30) (emphasis added). At another point, Plaintiffs re-allege that Mills "operated the subject truck when his ability to drive and his alertness were *impaired by fatigue* such that he could not operate the truck safety." (D.E. 11 ¶ 38)

03764/76653-BDB

(emphasis added). Thus, even under Plaintiffs' allegations, fatigued driving or something else other than intoxication could have made Mills "unable to stop" and caused the accident. (D.E. 11 ¶ 30). As a result, the Court should refrain from determining whether the exception applies and, instead, submit the matter to the jury. Indeed, the statute provides that this is the appropriate procedure. *See* Tenn. Code Ann. § 29-39-102(i) ("If there is a dispute of fact, the trier of fact, by special verdict, shall determine whether the exceptions set forth in subsection (h) apply to the defendant and the cause of action.").

Alternatively, if the Court (or jury) decides that any of the statutory exceptions to the damages cap apply, then the cap still applies to any claims asserted against Hurt and LSH. As discussed above, the only exception that possibly applies is the exception concerning intoxication (even though it is premature to determine whether the exception applies at this juncture). The exception only applies as to the claims against the specific defendant (Mills) whose conduct satisfies the exception. Tenn. Code Ann. § 29-39-102(h)(3) (stating that the cap does not apply where "the defendant" commits certain acts). Thus, the exception would only apply if the jury finds that "[Mills] was under the influence of alcohol, drugs or any other intoxicant or stimulant, resulting the defendant's judgment being substantially impaired, and causing the injuries or death." Tenn. Code Ann. § 29-39-102(h)(3). Mills is the only party alleged to have caused the accident by driving while intoxicated. The other Defendants were not present at the scene of the accident and are not alleged to have directly caused the accident, by intoxication or otherwise. As a result, in the event the Court or jury determines that the cap does not apply, then the cap is removed only as to Plaintiffs claims against the Estate of Tony Mills, not the other parties.[4]

---

[4] The statute specifically differentiates between claims against a defendant who is alleged

16

03764/76653-BDB

### III.     Conclusion

Based on the foregoing, the Court should deny Plaintiffs' Motion for Partial Summary Judgment on the Applicability of Tenn. Code Ann. § 29-39-102.

          Respectfully submitted,

          RAINEY, KIZER, REVIERE & BELL, P.L.C.

By:   ***/s/Brandon J. Stout***
      BRADFORD D. BOX, BPR #016596
      NATHAN E. SHELBY, BPR #026583
      BRANDON J. STOUT, BPR #033566
      209 East Main Street
      P. O. Box 1147
      Jackson, TN  38302-1147
      (731) 423‑2414

---

to have directly caused the injury at issue and other defendants in other places, as well. *See* Tenn. Code Ann. § 29-39-102(j) ("The liability of a defendant for noneconomic damages whose liability is alleged to be vicarious shall be determined separately from that of any alleged agent, employee or representative."). As to Mills' intoxication and the direct cause of the accident at issue, Plaintiffs' claims against LSH and Hurt are vicarious in nature. (D.E. 205 ¶ 53) ("At the time of the crash and at all times relevant hereto, Defendant Mills was an employee, agent, leased driver, statutory employee, and/or servant of Defendant LSH Transport and/or Defendant Steve Hurt, and was acting in the course and scope of his agency and/or employment such that all of them are responsible for the conduct of Defendant Mills under the principles of *respondeat superior*.").

03764/76653-BDB

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he served a true copy of this pleading or document upon counsel for each party using the CM/ECF system.

Matthew E. Wright
Wright Law, PLC
219 Third Ave. N.
Franklin, TN 37064

Larry Wallace
Wallace and Associates, P.C.
360 Furman Street, Ste. 723
Brooklyn, NY 11201

John R. Tarpley
Mary Beth White
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219-8615

Robert Moseley
Smith Moore Leatherwood, LLP
2 West Washington St., Suite 1100
P.O. Box 87
Greeneville, SC 29602

Charles L. Holliday
Law Offices of Jeffrey A. Garrety, P.C.
65 Stonebridge Boulevard
P.O. Box 10308
Jackson, TN 38301

Matthew T. May
Jeffrey S. Rosenblum
6070 Poplar Ave., Ste 550
Memphis, TN 38119

David J. Sneed
David J. Sneed and Associates
6640 Carothers Parkway, Suite 200
Franklin, TN 37067

Melanie Stewart
Stewart Law Group, PLLC
8275 Tournament Drive, Suite 160
Memphis, TN 38125

This the 12th day of January 2018.

                                                          **/s/Brandon J. Stout**