# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | |
|---|---|
| **AUGUSTINA AMALU, individually and as next of kin and administrator of the Estate of IFEYINWA STEPHANIE AMALU, deceased, et al,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**STEVENS TRANSPORT INC, et al,**<br><br>**Defendants.** | **Nos.1:15-cv-01116-STA-egb**<br>**1:15-cv-01117-STA-egb**<br>**1:15-cv-01175-STA-egb**<br>**1:15-cv-01298-STA-egb**<br><br><br>**JURY DEMANDED** |

## REPLY TO STEVENS TRANNTRNSPORT, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMMARY JUDGMENT DECLARING THE NONECONOMIC LOSS CAP INAPPLICABLE

Plaintiffs Augustina C. Amalu, individually and as next of kin of and Administrator of the Estate of Ifeyinwa Stephanie Amalu, deceased, and Ody Udeozo and Josephine Udeozo, individually and as next kin of and Administrators of the Estate of Chinelo Udeozo, deceased's (collectively "Plaintiffs") by and through their undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, hereby submits the following Reply to Stevens Transport Inc.'s ("Stevens") Opposition to Plaintiffs' Motion for Partial Summary Judgment.

## ARGUMENT AND ANALYSIS

**The applicability of the noneconomic loss cap is ripe for decision by partial summary judgment: The Tenn. Code Ann. §29-39-102 requires that the Court determine if there are "undisputed facts" that invoke Invalidation of the Noneconomic Loss Cap. Only if there are disputed facts does a jury decide the issue by "Special Verdict"**.

Tennessee cases that have addressed the issue of ripeness relative to the noneconomic loss cap imposed by Tenn. Code Ann. §29-39-102**,** considered only the constitutionality of the statute.  The cases that discuss ripeness do not address the invalidation clause contained in § 29-39-102 (h).

Stevens urges that it is immune from cap invalidation by the "inartful" wording of address § 29-39-102 (h) (Stevens Opposition at 9). In contravention of the plain meaning of the statute, Stevens attempts to limit the scope of the invalidation in manner contrary to the plain and ordinary meaning expressed in the statutory language. The statute expressly provides that when one or more of the invalidation provisions are triggered by the conduct of "the defendant" that conduct a "wrongful death" or "personal injury *action.*"  Stevens urges that there is silence concerning those cases in which some, but not all, defendants have engaged in acts that trigger cap invalidation. Plaintiff's submit that that "silence" in not pregnant.   The issue is addressed in the very first sentence of the invalidation clause—it applies to the action. The omission of the term "a defendant", "the defendant" or "multiple defendants" is what the legislators intended. Such a drastic limitation on noneconomic loss was accompanied by an equally drastic cap invalidation when "bad actors" infect the entire action.

 The statute refers to certain actions where this conduct invalidates the cap. At this stage of the proceedings, the focus is not on the amount of damages but the conduct of "the defendant".   The statute empowers the court to decide a motion for summary judgment and determine whether there are "undisputed facts" that warrant invalidation of the noneconomic loss cap. The noneconomic loss cap is invalidated based on conduct of the defendant--- without regard to the amount of damages.  Tenn. Code Ann. §29-39-102 was designed to address invalidation of the cap on noneconomic loss *prior* to any noneconomic loss jury verdict.  The

statute expressly provides that *only* where there is a "disputed fact" as to whether there exists

invalidation conduct, does the jury decide this issue by "special verdict", after rendering the

general verdict. [1] The applicable section of the Tennessee Civil Justice Act reads as follows:

> (h) The limitation on the amount of noneconomic damages
> imposed by subdivision (a)(2) and subsections (b)-(e) **shall not
> apply to personal injury and wrongful death actions:**
>
> **(2)** If the defendant intentionally falsified, destroyed or concealed
> records containing material evidence with the purpose of
> wrongfully evading liability **in the case at issue;**
> **(3) If the defendant was under the influence of alcohol, drugs
> or any other intoxicant or stimulant, resulting the defendant's
> judgment being substantially impaired, and causing the
> injuries or death.**
>
> (i) **If there is a dispute of fact**, the trier of fact, by **special verdict**,
> shall determine whether the exceptions set forth in subsection (h)
> apply to the defendant and the cause of action. TN Code § 29-39-
> 102 (h) (2014),

The above section of the Civil Justice Act is designed to give the court the flexibility of

deciding if the cap is invalidated where there is no "dispute of fact". This essential court function

streamlines the litigation, clarifies the issues at trial, and eliminates the need for a "special

verdict by the jury unless there is a "disputed fact" that the jury should resolve.

Under Federal Rule 56, one of the primary purposes of a motion for summary judgment

is to assure that the jury need only resolve disputed issues of fact.  Summary judgment procedure

is a method for promptly disposing of actions in which there is no genuine issue as to any

material fact. The amendment of Rule 56(c), by the addition of the final sentence, makes clear

that although the question of recovery depends on the amount of damages, the summary

---

[1] A special verdict is also required if there is a disputed issue of fact as to catastrophic loss: (f) If there is a disputed issue of fact, the trier of fact, by special verdict, shall determine the existence of a catastrophic loss or injury as defined in subsection (d), TN Code § 29-39-102 (f) (2014),

judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

Stevens asserts in its opposition papers (at pages 6-7) that the reasoning undergirding Clark v. Cain, 479 SW 3d 830 (Tenn. Sup. Court 2015), which declared the constitutionality of the Act not ripe for decision until after a verdict more than the cap, applies "more forcefully" in determining if the cap should be invalidated in this case. Stevens misapplies the ripeness doctrine and ignores the plain language of the statute. Clark made clear when a case is ripe for decision and it is certainly ripe when there are no disputed material facts. The question is solely the application of law to those facts.

Clark held that the central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all. In determining whether a case is ripe, courts typically engage in a two-part analysis, evaluating (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. 479 SW 3d at 832. Where the invalidation clause is inapplicable, as it was in Clark, the issue of constitutionality of Tenn. Code Ann. §29-39-102 did not become "ripe" until there was an award more than the cap.

The amount of damages that may be awarded is not a consideration when determining whether the defendant's conduct invalidates the cap. After all, the jury is not told about the cap even if there is a "disputed issue" of whether defendant engaged in behavior that invalidated the cap. Thus, the plaintiffs need not show that the damages will exceed the cap limits to get a determination by this court or the jury as to whether conduct of the defendant invalidates the

noneconomic loss cap. Before any damages are awarded the court can decide that the cap is invalidated by "undisputed facts" that the defendant was intoxicated, that his ability to drive was impaired, thereby causing the accident.  Similarly, before any damages are awarded the court on summary judgment can decide whether the defendant intentionally destroyed "material evidence".  No damages need be awarded before the court can decide these issues and thus the issue of cap invalidation is ripe for consideration by this court.

In the case at bar, it is undisputed that Tony Mills "(Mills")", the driver of the truck that caused this wreck was had an extremely high nontherapeutic dosage of methamphetamine in his system; it is undisputed that Mills' ability to drive was impaired; it is undisputed that Mills' conduct was the sole cause of this accident. Stevens could have easily presented an expert to "dispute" these facts. Stevens chose not to do so.

**Stevens asks this court to extend or limit the statute's meaning in a way that is inconsistent with the natural and ordinary meaning of the statutory language.**

"We do not inquire what the legislature meant; we ask only what the statute means." Textualism," as captured in this Justice Holmes' quote is dismissive of "explanatory" legislative materials, and inferences drawn from them and other extrinsic sources, in applying statutory language to a case.  Justice Antonin Scalia espoused a similar disdain for legislative comments and materials and what he perceived as excessive reliance on legislative history. The Supreme Court has never developed a uniform practice toward the use of legislative history in statutory interpretation, and neither has the Supreme Court of Tennessee. However, even if we look to legislative comments made during the two-month period the bill was presented and passed, there is no mention of the multiple defendants involved in an action where the invalidation clause is triggered.

Stevens refers to the comments of Rep. Dennis on two occasions in April 2011 one month before the bill was passed by the Tennessee legislature and presented to the Governor for signature on June 6, 2011. Entitled the "The Tennessee Civil Justice Act (HB 2008)", the bill was highly touted as a "jobs bill" necessary to stimulate the Tennessee's economy and make Tennessee competitive with bordering states[2] that had similar caps on noneconomic damages. The cap invalidation discussion essentially began April 2011 and ended one month before the bill was signed the Governor Simply stated there is no legislative guidance to be gleaned from the limited discussion of this bill and any reference to the cap invalidation provisions do not address the issue presented here.  Plaintiffs submit that the two months legislative hearings were brief and gives no guidance to this court.

Stevens' response to plaintiff's motion to invalidate the cap suggests to the court that the cap invalidation section of the statute is "ambiguous", and that the court should look to the "legislative intent" evinced by the hearings on the bill beginning with Rep. Dennis' comments from April 6, 2011 until the bill's passage a couple of months later.  It is submitted that legislative discussion concerning HB 2005 will provide no guidance to this court.  Instead, this court should consider the considerable body of well-established case law to discern legislative intent from the language of the statute.

 Rep. Dennis never discusses the cap invalidation as it relates to multiple defendants. Rep. Dennis discussed the cap invalidation by intoxication once: His concern was that intoxication must be proved to have caused the accident to invalidate the cap.  In this case it is an undisputed fact, supported by unrefuted expert testimony of plaintiffs' toxicologist, that an extremely high level of methamphetamine found on autopsy, impaired Mills' ability to drive.

---

[2] Tennessee borders eight other states: Kentucky and Virginia to the north; North Carolina to the east; Georgia, Alabama, and Mississippi on the south; Arkansas and Missouri on the Mississippi River to the west.

When the import of a statute is unambiguous, Tennessee courts discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." Stovall v. UHS of Lakeside, LLC (2014). Even where the statute as "not a shining example of legislative drafting." Smith v. Pratt, No. M2008-01540-COA-R9-CV, 2009 WL 1086953 (Tenn. Ct. App. Apr. 22, 2009), when courts are called upon to construe a statute, their goal is to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope. Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010); In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn.2009).

Because the legislative purpose is reflected in a statute's language, the courts must always begin with the words that the General Assembly has chosen. Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). Courts must give these words their natural and ordinary meaning. Hayes v. Gibson County, 288 S.W.3d 334, 337 (Tenn.2009). And because these words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose. State v. Flemming, 19 S.W.3d 195, 197 (Tenn.2000); State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle, 63 S.W.3d 734, 754-55 (Tenn. Ct. App. 2001); N. C. & St. L. Ry. v. Carroll County, 12 Tenn. App. 380, 387, 1930 WL 1711, at (1930).

Stevens opposition makes much of the Representative Dennis use of the term "individual" in his legislative comments relating to his motion to amending the statute provision related to felonies invoking inapplicability of the noneconomic loss cap. These comments by Dennis do not clarify the issues presented in this case, Dennis does not mention or address at any time during the legislative hearings either intoxication or the destruction of evidence provisions

invalidating the noneconomic loss cap. The comments by Rep. Dennis refer to a provision of the statute not applicable to this case. We submit that this court should not apply legislative language applicable "intentional act "provision to broaden the scope beyond the statute's intended scope. Tennessee case law is unambiguously resistant to broadening the scope of a statute in the manner proposed by Stevens in this case.

Stevens argues that because the invalidation section of the statute refers to "the defendant" rather than "a defendant" renders the statute "ambiguous" (Stevens' Response at page 10).  This reading of the statute ignores the plain meaning of the wording of the statue. And places far too much emphasis on one word "the" as opposed to "a.  The ordinary meaning of the word "the" can be a *determiner* as it refers to both several and one defendant, "denoting one or more people or things already mentioned or assumed to be common knowledge" (i.e., "the Supreme Court" or what's the matter?"  It can also be used to make a generalized reference to something rather than identifying a particular instance: (i.e., "they placed the African elephant on their endangered list").[3] The application of those statute does not depend upon the uses of the word "a" or "the".  Words that are not terms of art and that are not statutorily defined are customarily given their ordinary meanings, frequently derived from the dictionary. In the absence of a statutory definition, "we construe a statutory term in accordance with its ordinary or natural meaning." FDIC v. Meyer, 510 U.S. 471, 476 (1994). *See also, e.g.*, Mohamad v. Palestinian Authority, 566 ___, No.11-88, slip op. (April 18, 2012) ("individual," as used in the Torture Victim Protection Act, does not include an organization).

---

[3] www.dictionary.com/browse/the

In Calaway ex rel. Calaway v. Schucker, 193 SW 3d 509 (Tennessee Supreme Court 2005), the Tennessee Supreme Court gave effect to the plain language of the statute and held that plaintiffs in their minority are bound by the three-year medical malpractice statute of repose. Judge Breen wrote:

> The touchstone of this Court's role in statutory interpretation "is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)); see also State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000); State v. Butler, 980 S.W.2d 359, 362 (Tenn. 1998). We determine intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning," Flemming, 19 S.W.3d at 197 (citing Butler, 980 S.W.2d at 362), and if the language of a statute is clear, we must apply its plain meaning without a forced interpretation. Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000).

In the case at bar, the Civil Justice Act should be given its plain meaning without forced interpretation. Stevens concedes that the statue by its plain meaning and the use of the phrase "shall not apply "to an action" where the defendant (or in this case three defendants, Mills and LSH and Hurt) caused injury by intoxication or destroyed material evidence "could" mean that the noneconomic loss cap is invalidated as to all defendants in the action.

The comparative fault provisions of the statute specifically refer to multiple defendants" one can presume from the plain meaning of the statute that the omission of multiple defendants from the invalidation provision of the statute was intentional. This omission of the term multiple defendants lends strength to the position that the legislature intended the invalidation to apply to the entire action where the acts of any defendant involved invalidation of the noneconomic loss cap. The imposition of the statute was such a major change in civil administration of personal

injury and wrongful death suits that precise application of the terms of the statute is both warranted and mandated when combined with the language "shall apply".

Where the legislature includes language in one section of a statute but omits it in another ..., it is generally presumed that the legislature acted intentionally and purposely in the disparate inclusion or exclusion." The Court cited this maxim when Congress had restricted direct access by Guantanamo detainees to the courts but did not expressly restrict access in pending cases through petitions for writs of habeas corpus: "A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." Keene Corp. v. United States, 508 U.S. 200, 208 (1993) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)). *See also* Bailey v. United States. 516 U.S. 137, 146 (1995) (distinction in one provision between "used" and "intended to be used" creates implication that related provision's reliance on "use" alone refers to actual and not intended use); Merck v. Reynolds, 559 U.S. ___, No. 08-905 (April 27, 2010) (Scalia, J., concurring) (use of "discovery" alone in one securities fraud statute of limitations provision and the use of "discovery, or after such discovery should have been made" in another securities fraud statute of limitations provision implies that "discovery" in the first provision means only "actual discovery" and does not include "constructive discovery"); and Bates v. United States, 522 U.S. 23, 29 (1997) (inclusion of "intent to defraud" language in one provision and exclusion in a parallel provision).

Steven's reliance on an Idaho case with a completely different statutory wording is a misplaced. Stevens cites to this court the Idaho case of Kirkland v. Blaine County Medical Center, 4 P. 3d 1115 (Idaho, S. Ct. 2000). In Kirkland, the Idaho statute placed a "limitation of awards of noneconomic damages" that did not apply to "causes of action arising out of willful or

reckless misconduct." This case and the statutory provision it analyzes are inapplicable to the case at bar. In <u>Kirkland</u>, the theory of liability and the resultant verdict was for a cause of action based on negligence of the hospital. The cause of action and the resultant verdict against the physician was based on his own reckless conduct. In <u>Kirkland</u>, there were two different causes of action, arising out of different facts and resulting in two different verdicts. This case is distinguishable in two respects. First, the statute did not apply the invalidation clause to the "action". Second, the theories of liability and the acts of the hospital and physician were completely different causes of action: One for negligence which did not trigger invalidation of the cap, the other for reckless conduct which invalidated the cap.

The Tennessee Justice Act should also be given its plain meaning without the strained and expansive interpretation proposed by Stevens. The courts may presume that the General Assembly used every word deliberately and that each word has a specific meaning and purpose. <u>State</u> v. <u>Hawk</u>, 170 S.W.3d 547, 551 (Tenn. 2005). The legislature clearly court stated that the limitation on the amount of noneconomic damages "shall not apply to personal injury and wrongful death actions".

**Only one of the eight "cap" states bordering Tennessee apply a cap invalidation clause. The only North Carolina case addressing the issue, applied the invalidation clause to the entire action and not as to individual defendants.**

Of the states bordering Tennessee, Kentucky, Arkansas have no cap. Alabama, Georgia, Missouri have caps on medical malpractice cases that were declared unconstitutional Missouri's cap was reenacted under Section § 538.210, Virginia, Missouri, Mississippi have caps with has no invalidation clauses.

The only state bordering Tennessee with a damage cap and similar invalidation clause is

North Carolina. North Carolina has an invalidation clause on medical malpractice damages. That

refers to both "a defendant" and "the defendant"

> (b) Notwithstanding subsection (a) of this section, there shall be no
> limit on the amount of noneconomic damages for which judgment
> may be entered against a defendant if the trier of fact finds both of
> the following:
> (1) The plaintiff suffered disfigurement, loss of use of part of the
> body, permanent injury or death.
> (2) The defendant's acts or failures, which are the proximate cause
> of the plaintiff's injuries, were committed in reckless disregard of
> the rights of others, grossly negligent, fraudulent, intentional or
> with malice.

North Carolina has a $500,000 cap on non-economic damages in medical malpractice

cases filed on or after October 1, 2011. *N.C. Gen. Stat. § 90-21.19 (Westlaw 2012)* (as amended

by SB 33).  There is an exception to the damage cap for cases of disfigurement, loss of use of

part of the body, permanent injury, or death, if the acts or failures that caused the injury were

committed in reckless disregard of the rights of others, grossly negligent, fraudulent, intentional,

or with malice. Thus, the exception requires *both* a high level of severity and a heightened level

of culpability. In Hill v. SSC Statesville Maple Leaf Operating Company, LLC, Case No. 5:11-

CV-00164-RLV-DSC (Dist. Court, WD North Carolina 2012), Richard Voorhees, District Judge.

Wrote in approving a court ordered tolling agreement that provisions of N.C. Gen. Stat. § 90-

21.19 providing for" a potential limit for noneconomic damages *shall not apply to a re-filed or a*

*filed Complaint*" (Hill v. SSC Statesville Maple Leaf Operating Company, LLC, emphasis

added).

## CONCLUSION

In sum, the "undisputed facts" that establish invalidation of the cap also make this case

ripe for summary judgment decision by this court. Traditional statutory construction guided by

the plain meaning of the statute applies invalidation of the cap to this "personal injury" and

"wrongful death action" and is not selective as to each defendant in that action.


Respectfully submitted,

WRIGHT LAW, PLC

*s/Matthew E. Wright*
Matthew E. Wright, BPR #22596
219 Third Avenue, North
Franklin, TN 37064
(615) 812-1351
mwright@wrightlawplc.com
www.wrightlawplc.com


Larry Wallace, Admitted *Pro Hac Vice*
Wallace and Associates, P.C.
360 Furman St. Suite 723
Brooklyn, NY 11201
(914)224-6411
wallacelaw.com@gmail.com

*Attorneys for Plaintiffs*



<u>CERTIFICATE OF SERVICE</u>

I, Matthew E. Wright, hereby certify that a true and correct copy of the foregoing was served, via the court's ECF which sends notice to the following:

*Augustina C. Amalu, individually and as next kin of and Administrator of the Estate of Ifeyinwa Stephanie Amalu, deceased and Ody Udeozo and Josephine Udeozo, individually <u>and as next kin of and Administrator of the Estate of Chinelo Udeozo, deceased:</u>*
Larry L. Wallace, Pro Hac Vice
Wallace & Associates, P.C.
360 Furman Street, Suite 723
Brooklyn, NY 11201
wallacelaw.com@gmail.com

13

*David Lindsey and the Estate of Kristi Mills*:
Charles L. Holliday
Law Offices of Jeffrey A. Garrety, P.C.
65 Stonebridge Boulevard
P.O. Box 10308
Jackson, Tennessee 38305
chuck@garretylaw.com

Melanie Stewart
Stewart Law Group, PLLC
8275 Tournament Drive, Suite 160
Memphis, TN 38125
mstewart@heatonandmoore.com

*James and Glenda Hartmann*:
Jeffrey S. Rosenblum
Matthew T. May
Rosenblum & Reisman, P.C.
6070 Poplar Ave., Suite 550
Memphis, TN 38119
jeffr@randfirm.com
matt@randfirm.com

*LSH Transport, LLC, Steve Hurt and Tim Mills as Personal*
*Representative for the Estate of Tony Mills and K&S Trucking*:
Nathan Shelby
Brandon J.  Stout
Rainey Kizer
P.O. Box 1147
Jackson, TN 38302
nshelby@raineykizer.com
bstout@raineykizer.com

*Brian Murry and Cooper Truck Line, Inc.*:
David Sneed
David J. Sneed & Associates
200 Eight Corporate Center
6640 Carothers Parkway
Franklin, TN 37067
dsneed@travelers.com

*Stevens Transport, Inc. and Stevens Transport TL, Inc.*:
John R. Tarpley
Mary Beth White
Josiah R.  Reid
Bradford D. Telfeyan

424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219-8615
mbwhite@lewisthomason.com

Robert D. Moseley, Jr.
Smith Moore Leatherwood, LLP
2 West Washington Street, Suite 1100
P.O. Box 87
Greenville, SC 29602-0087
Rob.Moseley@smithmoorelaw.com


on January 26, 2018.

*s/Matthew E. Wright*
Matthew E. Wright
